UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


**Beatrice M. Hunt**

   **v.**                                    Case No. 09-cv-51-PB
                                          Opinion No. 2010 DNH 075

**Golden Rule Insurance Company**


## MEMORANDUM AND ORDER

     Beatrice M. Hunt has petitioned for declaratory judgment that Golden Rule Insurance Company has breached its contract with Hunt and, alternatively, that Golden Rule has violated New Hampshire Revised Statutes Annotated ("RSA") § 417, which prohibits unfair trade practices in the insurance industry. Golden Rule moves for summary judgment on both counts. For the reasons set forth below, I grant Golden Rule's motion.


### I.  BACKGROUND

     Beginning in March 1987 and at all other relevant times, Hunt was insured under a Golden Rule policy that provided for "[m]ajor [m]edical [b]enefits" and a "[d]ecreasing [t]erm [l]ife

[i]nsurance [b]enefit."  (Pl.'s Ex. A, Doc. No. 1-1,[1] at 3.)  The major medical benefits coverage included coverage for mental or nervous disorders.  (See id.)  The "[p]olicy [d]ata [p]age," which summarizes the coverage under Hunt's policy, notes that the "[m]aximum [b]enefit [l]imit" is $1,000,000 per covered person.  (Id.)  The same page notes that there is a $10,000 "[m]ental or [n]ervous [d]isorder [l]imit."  (Id.)  In a more comprehensive explanation, the policy notes that "[t]he '[m]aximum [b]enefit [l]imit,' shown on page 3 [i.e., the $1,000,000 limit], is the total benefit that may be paid for Covered Expenses incurred during the covered person's lifetime."  (Id. at 9 (emphasis omitted).)  The policy also has a section on mental or nervous disorders that first explains differences in coverage for inpatient versus outpatient treatment of mental disorders, and

---

[1] Document Number 1-1, which includes a copy of the insurance policy at issue (labeled "Exhibit A"), is under seal per my order of February 23, 2010.  (See Protective Order, Doc. No. 13.)  When Hunt attempted to submit a revised copy of the policy as Exhibit A to her first amended complaint, she submitted only a cover sheet for the policy.  (See First Am. Compl. Ex. A, Doc. No. 12-2.)  In this order, I refer to the copy of the insurance policy that is part of Document Number 1-1 because it is the only copy that I have.  The plaintiff is hereby ordered to submit a copy of the insurance policy that does not include her residential address but is otherwise complete.  I cite to the page numbers of the policy itself rather than to the page numbers of Document Number 1-1 so that the page numbers cited here will be consistent with those on the new copy of the policy.

then notes that the "total liability under the policy for all losses due to mental or nervous disorders . . . of any one covered person will not exceed the amount shown on page 3." (Id. at 11 (emphasis omitted).)  The parties disagree about whether this statement, in the context of the policy, unambiguously limits Golden Rule's liability for mental or nervous disorders to $10,000.

Hunt received outpatient treatment for "a mental or nervous disorder" in 2005, 2006, and 2007.  (See First Am. Compl., Doc. No. 12-1, ¶¶ 24-26.)  She incurred costs totaling more than $10,000 for this treatment.  (See id.)  In January 2006, Golden rule notified Hunt that because it had "previously paid $8,505.81 for mental disorders," it would only "pay[] $1,494.19" on the most recently submitted claim because "the lifetime maximum amount [of $10,000] ha[d] been met."  (Id. ¶ 27 (internal quotation marks omitted).)

Hunt alleges that because the policy is ambiguous as to whether there is a $10,000 limit on coverage for mental or nervous disorders, the $10,000 mental health limit is unenforceable, and Golden Rule can only enforce the $1,000,000 lifetime limit.  Alternatively, Hunt alleges that Golden Rule violated RSA § 417:4, VIII, which prohibits unfair discrimination

-3-

in the insurance industry, by limiting coverage for mental or nervous disorders but not coverage for other disorders.

## II.  **STANDARD OF REVIEW**

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The evidence submitted in support of the motion for summary judgment must be considered in the light most favorable to the nonmoving party, indulging all reasonable inferences in its favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.  The opposing party "may not rely merely on allegations or denials in

-4-

its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

### III.  ANALYSIS

#### A.  Ambiguity in the Insurance Policy

Hunt argues that she is entitled to payment up to her policy's general lifetime limit of $1,000,000 because the policy is ambiguous about whether there is a $10,000 lifetime limit on coverage for mental or nervous disorders.  Golden Rule contends that the policy is unambiguous and should be enforced as written with respect to the $10,000 limit on payments for mental or nervous disorders.

In New Hampshire, "[t]he interpretation of insurance policy language is a question of law for [a] court to decide."  Colony Ins. Co. v. Dover Indoor Climbing Gym, 974 A.2d 399, 401 (N.H. 2009).  Courts must "construe the language of an insurance policy as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole."  Id. "[A]n insurance company is free to limit its liability through an exclusion written in clear and unambiguous policy language" so long as there is no "statutory provision or public policy to the

contrary." Trombley v. Liberty Mutual Ins. Co., 813 A.2d 1202, 1204 (N.H. 2002). To determine whether policy language is ambiguous, courts must "look to the claimed ambiguity, consider it in its appropriate context, and construe the words used according to their plain, ordinary, and popular definitions." Colony, 974 A.2d at 401. If policy language is ambiguous, "the ambiguity will be construed against the insurer." Id. However, if the language is clear, courts must not "perform amazing feats of linguistic gymnastics to find a purported ambiguity simply to construe the policy against the insurer and create coverage where it is clear that none was intended." Id. (internal quotation marks omitted).

Hunt first argues that the policy is ambiguous because the reference, in the section on mental or nervous disorders, to the limit "shown on page 3" could refer to either the $10,000 mental or nervous disorder limit or the $1,000,000 general per person limit, both of which are listed on the policy's third page. (See Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Doc. No. 8, at 2-3; First Am. Compl., Doc. No. 12-1, ¶ 37.) The policy's section on mental or nervous disorders states,

> If a covered person incurs an expense for the treatment of a mental or nervous disorder, or for mental retardation, while an inpatient, the policy will cover the expense the same as

-6-

>     any other illness.  If treatment for a mental or nervous
>     disorder, or for mental retardation, is rendered to the
>     covered person while an outpatient, the benefits for doctor
>     fees will be limited to 50% of the fees, not to exceed a
>     maximum benefit of $25.00 per visit.  Our total liability
>     under the policy for all losses due to mental or nervous
>     disorders, or mental retardation, of any one covered person
>     will not exceed the amount shown on page 3.

(Pl.'s Ex. A, Doc. No. 1-1, at 11.)  Hunt contends that a reasonable person could construe "the amount shown page 3" as referring to the policy's $1,000,000 maximum benefit limit rather than the $10,000 mental or nervous disorder limit.  (See Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Doc. No. 8, at 2-4.)  This argument is meritless.  The policy defines the $1,000,000 maximum benefit limit as the total amount that Golden Rule will pay during a covered person's lifetime.  (See Pl.'s Ex. A, Doc. No. 1-1, at 9.)  If "the amount shown on page 3" referred to the general $1,000,000 limit, this would render the last line of the above-quoted paragraph mere surplusage, because the policy already states elsewhere that Golden Rule's total payments for any insured will not exceed $1,000,000.  See Int'l Surplus Lines Ins. Co. v. Mfrs. & Merchants Mut. Ins. Co., 661 A.2d 1192, 1195 (N.H. 1995) ("We will not presume language in a policy to be mere surplus.").  Thus, a reasonable person, reading the policy as a whole, would assume that the reference to the "amount shown on

page 3" refers to the $10,000 limit.

Hunt's second, alternative argument is that even if "the amount shown on page 3" unambiguously refers to the $10,000 mental or nervous disorder limit, it is not clear that this limit is a lifetime limit as opposed to an annual, per illness, or other type of limit. (See First Am. Compl., Doc. No. 12-1, ¶¶ 34-36.) The policy states that Golden Rule's "total liability under the policy for all losses due to mental or nervous disorders . . . will not exceed the amount shown on page 3." (See Pl.'s Ex. A, Doc. No. 1-1, at 11 (emphasis omitted).) Hunt contends that a reasonable person could construe this language to mean that Golden Rule will only cover up to $10,000 for any given illness, or in any given year. This argument is also meritless. "All losses" is not defined in the policy. "All," however, generally means "the whole amount or quantity of" something. Webster's Third New International Dictionary 54 (1993). "Dictionary definitions may be used in the interpretive process and 'are of some value . . . to the extent they inform us of the common understanding of terms.'" Progressive N. Ins. Co. v. Concord General Mut. Ins. Co., 864 A.2d 368, 372 (N.H. 2005) (quoting Hudson v. Farm Family Mut. Ins. Co., 697 A.2d 501, 503

(N.H. 1997)).[2] No reasonable person in Hunt's position, based upon a more than casual reading of the policy as a whole, would construe "all losses" to mean all losses for a given year, illness, or other unit of measurement besides a lifetime.

Accordingly, I conclude that Golden Rule unambiguously limited its liability for mental or nervous disorders to $10,000, and thus that Golden Rule is entitled to summary judgment on the first count.

## B. Unfair Discrimination by Golden Rule

Hunt alternatively alleges that Golden Rule's $10,000 cap on benefits for mental or nervous disorders is either unenforceable and/or void under New Hampshire law because it unfairly

---

[2] Hunt also argues that because Golden Rule explicitly notes that the maximum benefit limit is a lifetime limit but does not do the same for the mental or nervous disorder limit, a reasonable person might infer that Golden Rule did not intend to impose a lifetime limit on mental or nervous disorder benefits. (See First Am. Compl., Doc. No. 12-1, ¶¶ 35-36; Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Doc. No. 8, at 4.) On the policy data page, the only limits that do not include temporal units of measurement are the mental or nervous disorder limit and the maximum benefit limit per covered person. (See Pl.'s Ex. A, Doc. No. 1-1, at 3.) These are also the only limits that Golden Rule argues are lifetime limits. The maximum benefit limit per covered person is later defined as a lifetime limit. (See Pl.'s Ex. A, Doc. No. 1-1, at 9.) The only reasonable conclusion to draw based on a more than casual reading of the policy as a whole is that both of the limits on the policy data page without temporal units of measurement are lifetime limits.

discriminates between policyholders who have mental or nervous disorders and those who do not.  (First Am. Compl., Doc. No. 12-1, ¶ 57.)  Hunt cites two provisions of RSA § 417:4 that prohibit certain types of discrimination in the insurance industry:  (1) Section 417:4, VIII(b), which prohibits "[m]aking . . . any unfair discrimination between individuals of the same class and of essentially the same hazard in . . . the benefits payable [under any health insurance contract], or in any of the terms or conditions of such contract, or in any other manner whatsoever," and (2) Section 417:4, VIII(c), which prohibits "[m]aking any unreasonable distinction or discrimination between persons as to the policy, premiums, or rates charged for policies upon the lives or health of such persons, or in any other manner whatever."  N.H. Rev. Stat. Ann. § 417:4 (2006); (<u>see</u> First Am. Compl., Doc. No. 12-1, ¶ 44).

   Golden Rule responds that Hunt's claim suffers from both procedural and substantive defects.  Procedurally, Golden Rule argues, Hunt has erred because RSA § 417 "does not provide a private cause of action for insureds who allege unfair insurance trade practices, absent a prior finding of an unfair insurance trade practice by the New Hampshire insurance commissioner."  (See Def. Golden Rule Ins. Co.'s Mem. of Law in Supp. of Its Mot.

for Summ. J., Doc. No. 6-1, at 7.)  Substantively, Golden Rule argues that Hunt's claim is meritless because New Hampshire law permits insurance companies to cap benefits for mental or nervous disorders at a lower amount than its limit for other benefits. (See id. at 7-8.)  I need not address the procedural arguments because I resolve the dispute surrounding Hunt's second claim on substantive grounds.

Statutes must be "interpret[ed] . . . in the context of the overall statutory scheme and not in isolation."  In re Watterworth, 821 A.2d 1107, 1111 (N.H. 2003).  RSA § 417 does not define "discrimination," but its meaning, as relevant to this dispute, can be deduced from other sections of the New Hampshire code.  RSA § 415:18-a, which regulates coverage for mental illnesses and disorders in group insurance policies, provides,

> In the case of policies or certificates providing benefits for hospital and medical expenses on a major medical basis, benefits arising from treatment, diagnosis and evaluation of mental illnesses and disorders shall be subject to deductibles and coinsurance at least as favorable as those which apply to the benefits for any other illness, provided that <u>benefits payable</u> for expenses incurred in any consecutive 12-month period <u>may be limited</u> to an amount not less than $3,000 per covered individual, and <u>to a lifetime maximum of not less than $10,000 per covered individual</u>.

N.H. Rev. Stat. § 415:18-a, IV(a) (2006) (emphasis added).  As Golden Rule notes, Hunt's "assertion that a limitation expressly

-11-

allowed under New Hampshire law for group insurance policies is at the same time an unfair insurance trade practice with respect to individual insurance policies is, at best, nonsensical." (See Def. Golden Rule Ins. Co.'s Reply Mem., Doc. No. 10, at 5.) Accordingly, I conclude that the $10,000 limit is permitted by New Hampshire law and Golden Rule is entitled to summary judgment on count two.

## IV. CONCLUSION

For all of the foregoing reasons, I grant Golden Rule's motion for summary judgment (Doc. No. 6). After the plaintiff has submitted a copy of the insurance policy as directed in this order, see supra note 1, the clerk shall enter judgment and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

May 5, 2010

cc: Gordon R. Blakeney, Jr., Esq.
    William D. Pandolph, Esq.